Filed 3/3/16  P. v. McIntyre CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>DELL MCINTYRE,<br><br>      Defendant and Appellant. | B263644<br><br>(Los Angeles County<br>Super. Ct. No. BA403144) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Barbara R. Johnson, Judge.  Affirmed with modifications.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven E. Mercer and Paul S. Thies, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Dell McIntyre (defendant) appeals his convictions for second-degree robbery and assault by means likely to inflict great bodily injury as well as the resulting 27-year prison sentence. Defendant argues that the trial court should have given a self-defense instruction, should have stayed the sentence on his assault conviction under Penal Code section 654,[1] and miscalculated the assault sentence. We reject defendant's first argument, but find merit with his second and third arguments. We consequently affirm his convictions and order that his sentence be reduced to 23 years with a stayed consecutive sentence of two years on the assault count.

### FACTS AND PROCEDURAL BACKGROUND

Defendant walked up to Drew Michael (Michael), said "give me your shit," and "snatched" a bag "out of [Michael's] hand" containing Michael's prescription medication. As defendant walked away, Michael started to follow. When Michael was about three to six feet behind defendant, Michael said, "You stole my medication." Michael never touched defendant. Defendant "sudden[ly]" turned around and punched Michael with his fists multiple times; this knocked Michael to the ground, broke his nose, and caused a laceration to his chin that necessitated eight stitches.

The People charged defendant with (1) second-degree robbery (§ 211), and (2) assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)). As to both counts, the People alleged that defendant had personally inflicted great bodily injury (§ 12022.7, subd. (a)). The People further alleged that defendant's 2002 attempted robbery conviction, his 1999 Massachusetts armed assault conviction, and his 1987 Massachusetts robbery conviction constituted "strikes" under our "Three Strikes" law (§§ 1170.12, subds. (a)-(d) & 667, subds. (b)-(i)), prior "serious" or "violent" felonies (§ 667, subd. (a)(1)), and prior prison terms (§ 667.5, subd. (b)). The People alleged six other prior prison terms as well.

---

**1**     Unless otherwise indicated, all further statutory references are to the Penal Code.

The matter proceeded to trial. During closing arguments, the People argued that the "force and fear" supporting the robbery conviction was the "savage beating that . . . defendant dish[ed] out to . . . Michael's face." The jury convicted defendant of both crimes, and found the great bodily injury allegation to be true. In a birfurcated trial, the court found that the 2002 attempted robbery conviction and the 1999 armed assault conviction constituted "strikes" and prior "serious" or "violent" felonies; the court also found six prior prison terms.

The court orally imposed a 27-year sentence and the abstract of judgment reflects that sentence, but the minute order from the sentencing hearing indicates a prison sentence of 23 years *and* 27 years. The court imposed a 23 year sentence on the robbery count comprised of a 10-year base sentence (five years, doubled as a second strike sentence), plus two five-year "serious" and/or "violent" felony enhancements, plus three more years for the great bodily injury allegation. As to the assault count, the court orally imposed a consecutive four-year sentence (two years doubled as a second strike sentence), which is reflected in the abstract of judgment and the last part of the minute order. The court struck the 1999 armed assault conviction as a "strike" and struck all six prison priors.

Defendant timely appeals.

## DISCUSSION

### I. Self-Defense Instruction

Defendant argues that his assault conviction must be overturned because the trial court did not instruct the jury on self-defense. We disagree.

Self-defense is available only when "the defendant . . . actually and reasonably believe[s] in the need to defend" himself due to "'imminent danger to life or great bodily injury.' [Citation]." (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082.) The reasonableness of the defendant's belief is adjudged "'from the point of view of a reasonable person in the position of [the] defendant . . . .'" (*Id.* at p. 1083, quoting *People v. McGee* (1947) 31 Cal.2d 229, 238.) A trial court has a duty to instruct on a defense, even if not requested, if "there is substantial evidence supporting [that] defense."

3

(*People v. Villanueva* (2008) 169 Cal.App.4th 41, 49.) We independently review a trial court's decision not to instruct on a defense. (*People v. Orlosky* (2015) 233 Cal.App.4th 257, 270.)

We conclude that substantial evidence did not support a self-defense instruction. As noted above, Michael did nothing that would cause a reasonable person in defendant's position to fear bodily harm of any sort: Michael followed defendant and accused him of taking his mediation; Michael made that accusation from a distance of three to six feet and without touching defendant. In *People v. Kranhouse* (1968) 265 Cal.App.2d 440, 450-451, the court held that a self-defense instruction was not available to a defendant who tackled the victim after the victim "poked his car keys in defendant's hand" to get his valise back from the defendant. Michael used even less force, and posed even less of a threat of physical harm, than the victim in *Kranhouse*.

Defendant argues that one of the witnesses saw Michael approach defendant in a "confrontational" manner. The transcript does not support this argument. Defendant's attorney asked the witness whether Michael approached "in a confrontational manner," and the witness replied, "that wasn't my phrasing. What he did is, when he stopped, he approached [defendant]. And I couldn't hear what they were saying when [Michael] pointed at [defendant's] hands. And they were obviously having words, but there was no punches or nothing like that. It was like he was accusing him of something is what it looked like." Notwithstanding that answer, the defense attorney asked the same witness, five questions later, "Now, after [Michael] approached [defendant] in a confrontational manner, then you saw the black male turn around and punch the white male[,] right?" The witness answered, "Correct." Read together, these exchanges do not constitute substantial evidence that the encounter was confrontational, let alone a justification for the beating defendant inflicted.

In sum, there was no instructional error.

## II. Stay of Assault Conviction Under Section 654

Defendant next argues that the trial court erred in imposing a consecutive sentence on the assault by means likely to cause great bodily injury count rather than staying the sentence under section 654. We agree.

Section 654 prohibits a court from "punish[ing]" "[a]n act or omission"—or a "course of criminal conduct"—"under more than one provision." (§ 654, subd. (a); *People v. Capistrano* (2014) 59 Cal.4th 830, 885.) "'"'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'"'" (*Ibid.*, quoting *People v. Rodriguez* (2009) 47 Cal.4th 501, 507; *People v. Beamon* (1973) 8 Cal.3d 625, 639-640 (*Beamon*).) The trial court in this case did not address the section 654 issue; we review its "implicit finding that section 654 does not apply . . . [for] substantial evidence." (*People v. Rodriguez* (2015) 235 Cal.App.4th 1000, 1005.)

We conclude there is not substantial evidence to support the finding that defendant acted with a different intent or objective in assaulting Michael than he did when taking his medication from him moments earlier. That is because defendant's assault on Michael was what made defendant's theft a robbery in the first place. Where, as here, fear is not used, robbery requires a use of physical force over and above what is necessary to seize the property taken. (See *People v. Morales* (1975) 49 Cal.App.3d 134, 139 ["something more is required than just that quantum of force which is necessary to accomplish the mere seizing of the property"]; *People v. Burns* (2009) 172 Cal.App.4th 1251, 1259 [same]; *People v. Wright* (1996) 52 Cal.App.4th 203, 210 [same].) Here, that something more is absent: The evidence showed that defendant simply "snatched" the bag of medication from Michael. (Cf. *Burns*, at p. 1259 [defendant overcame victim's resistance and stepped on her foot; sufficient use of force]; *People v. Prieto* (1993) 15 Cal.App.4th 210, 215 [defendant and victim physically struggled; sufficient use of force].) Indeed, the prosecutor explicitly argued that the "savage beating" defendant

5

administered constituted the very "force or fear" needed to convict defendant of robbery. Where the assault is what makes the crime a robbery, the defendant's intent and objective in assaulting the victim is indistinguishable from his intent to commit the robbery and section 654 applies. (See, e.g., *In re Jesse F.* (1982) 137 Cal.App.3d 164, 171 ["if an assault is committed as the means of perpetrating a robbery, section 654 requires the sentence for the assault to be stayed"]; *Beamon*, *supra*, 8 Cal.3d at p. 637 ["one who uses a deadly weapon in the commission of first degree robbery simultaneously assaults the victim with such weapon but clearly may not be punished for both the robbery and assault with a deadly weapon"]; *In re Henry* (1966) 65 Cal.2d 330, 330-331 [assault with firearm while robbery in progress; section 654 applies]; *People v. Niles* (1964) 227 Cal.App.2d 749, 752-755 [assault with firearm after victim took back property; section 654 applies]; *People v. Sutton* (1973) 35 Cal.App.3d 264, 271, fn. 1 (*Sutton*) [assault with firearm while robbery in progress; noting, in dicta, that section 654 applies].)[2]

The People raise three arguments in response. First, the People contend that the amount of force defendant used on Michaels was well in excess of what was needed to make the crime a robbery, and that defendant's use of excessive force is evidence of a separate intent to inflict pain. However, "mere excessiveness of force used does not establish an independent intent and thus a divisible criminal act." (*People v. Donohue* (1962) 200 Cal.App.2d 17, 31.) Proof of a further intent is required. Thus, in *People v. Cleveland* (2001) 87 Cal.App.4th 263, the court affirmed separate punishments for robbery and attempted murder because the robber's use of excessive force was grounded in the "history of negative interaction" between the two. (*Id.* at p. 272 ["(i)t is this history which motivated the gratuitous violence supporting the finding of two simultaneous intents"]; see also, *People v. Nguyen* (1988) 204 Cal.App.3d 181, 185, 190-191 [gratuitous violence was separate from and in addition to force to effectuate robbery;

---

[2]    Whether section 654 requires a stayed sentence is a separate question than whether the defendant may stand *convicted* of both crimes. (E.g., *People v. Logan* (1953) 41 Cal.2d 279, 290; *Sutton*, *supra*, 35 Cal.App.3d at p. 267.) The latter issue is not before us.

6

multiple punishment permitted].)  There is no evidence in the record that defendant harbored a further intent.

Second, the People assert that the robbery was "essentially completed" by the time defendant assaulted Michael.  This argument is not supported by the record which, as noted above, establishes that defendant's theft did not *become* a robbery until defendant assaulted Michael.  What matters is the relationship between the robbery and the assault, not the timing of when they occurred vis-à-vis the end of the robbery.  (See *People v. Estes* (1983) 147 Cal.App.3d 23, 28 [the "crime of robbery is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety"].)

Lastly, the People argue that defendant assaulted Michael with the separate intent to prevent him from sounding the alarm, and cite *People v. Coleman* (1989) 48 Cal.3d 112 for support.  In *Coleman*, the defendant compelled one woman to help him rob another victim and then proceeded to shoot his helper after he completed the robbery and shot the robbery victim; the court upheld separate punishments for the robbery and assault on the helper, in part because the assault "prevent[ed] the victim from sounding the alarm about the murder" of the robbery victim.  (*Id.* at pp. 162-163.)  Unlike in *Coleman*, the robbery and assault victim in this case are one and the same:  Michael. More to the point, unlike in *Coleman*, defendant's assault is what made his crime a robbery; there is no basis for implying a distinct intent to avoid detection.

## III.    Calculation of Assault Sentence

Defendant lastly argues that the trial court erred in imposing four years on the assault count.  The People agree, and so do we. Where, as here, a subordinate crime is a second strike offense, a trial court is to double one-third of the mid-term sentence for that crime.  (*People v. Nguyen* (1999) 21 Cal.4th 197, 203-204.)  Because the mid-term sentence for assault by means likely to product great bodily injury is three years (§ 245, subd. (a)(4)), doubling one third of that sentence yields a sentence of two years.

## DISPOSITION

The convictions are affirmed. The sentence on count 2 is modified to a consecutive term of two years (one-third the middle term, doubled) and is stayed pursuant to section 654. The superior court is directed to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
HOFFSTADT

We concur:

_____, P.J.
BOREN

_____, J.
ASHMANN-GERST